**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ELIZABETH A. BROWN,**

                    Plaintiff,                  5:13-cv-888
                                                              (GLS)

               v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                      Defendant.
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Stanley Law Offices<br>215 Burnet Avenue<br>Syracuse, NY 13203 | JAYA A. SHURTLIFF, ESQ. |
| Law Offices of Kenneth Hiller, PLLC<br>6000 North Bailey Avenue - Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | ANDREEA L. LECHLEITNER<br>TOMASINA DIGRIGOLI<br>Special Assistant U.S. Attorneys |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Elizabeth A. Brown challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Brown's arguments, the Commissioner's decision is reversed and remanded.

## II. Background

On February 24, 2011, Brown filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since January 1, 2011. (Tr.[1] at 51-52, 110-26.) After her applications were denied, (*id.* at 53-60), Brown requested a hearing before an Administrative Law Judge (ALJ), which was held on February 7, 2012, (*id.* at 24-49, 64-66). On March 2, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-6, 8-23.)

Brown commenced the present action by filing her complaint on July 30, 2013 wherein she sought review of the Commissioner's determination. (Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (Dkt. Nos. 8, 10.)  Each party, seeking judgment on the pleadings, filed a brief.  (Dkt. Nos. 12, 14.)

### III.  **Contentions**

Brown contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (Dkt. No. 12 at 10-17.) Specifically, Brown claims that the ALJ erred in: (1) improperly evaluating her residual functional capacity (RFC); and (2) failing to obtain the testimony of a vocational expert (VE).  (*Id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence.  (Dkt. No. 14 at 4-16.)

### IV.  **Facts**

The court adopts the parties' undisputed factual recitations.  (Dkt. No. 12 at 2-9; Dkt. No. 14 at 1.)

### V.  **Standard of Review**

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. RFC Determination

Among other arguments, Brown contends that the ALJ did not apply the proper legal standards when determining Brown's RFC. (Dkt. No. 12 at 10-15.) Specifically, Brown argues that the ALJ should have afforded controlling weight to the opinion of treating physician Michael Lax. (*Id.*) Further, Brown claims that the opinion of consultative examiner Kalyani Ganesh was impermissibly vague, and, thus, does not constitute substantial evidence supporting the ALJ's RFC determination. (*Id.* at 11, 15.) Brown also asserts that the ALJ failed to "properly evaluate or make

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims. As review under both sections is identical, parallel citations to the regulations governing SSI are omitted.

accommodations for [her] mental deficits resulting from her pain," as found by consulting examiner Christina Caldwell and non-examining psychological consultant T. Harding. (*Id.*) The court agrees that remand is required here.

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[3] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

In this case, the ALJ concluded that Brown retains the RFC to perform light work[4] that does not require frequent pushing or pulling or "highly complex tasks." (Tr. at 15.) In determining Brown's RFC, the ALJ

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

[4] "Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds." 20 C.F.R. § 404.1567(b). Further, "the full range of light work requires standing or walking, off and on, for a total of approximately [six] hours of an [eight]-hour workday." SSR 83-10, 1983 WL 31251, *6 (1983).

relied on the opinion of Dr. Ganesh that Brown had no gross limitations for sitting, standing, and walking, and a mild to moderate limitation for lifting, carrying, pushing, and pulling.  (*Id.* at 17, 271.)  The ALJ also relied on the opinion of Dr. Caldwell that Brown can follow and understand simple directions, perform simple and complex tasks, maintain attention and concentration, maintain a schedule, and make appropriate decisions.  (*Id.* at 14-15, 266.)  According to Dr. Caldwell, due to her physical limitations and adjustment disorder, Brown is limited in her ability to relate appropriately with others and deal with stress.  (*Id.* at 266.)  Harding reviewed the evidence of record in June 2011 and opined that Brown was moderately limited in her ability to understand, remember, and carry out detailed instructions and accept criticism from supervisors.  (*Id.* at 288-91.)  Ultimately, Harding concluded that Brown retains the functional capacity for concentration, persistence, and pace required in the work setting, and her claim should be denied from a psychiatric stand point.  (*Id.* at 290.)

As Brown points out, the ALJ discounted the opinion of Dr. Lax, who treated Brown for cervical disc disease, cervical and thoracic strains, a shoulder impingement, and mid back pain.  (*Id.* at 18.)  In January 2012, Dr. Lax completed a medical source statement and, rather than answering

6

questions with respect to Brown's functioning, repeatedly noted that Brown was unable to work at that time. (*Id.* at 322-24.)[5] Generally, controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. *See* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "good reasons for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (internal quotation marks and citations omitted).

Here, the ALJ explained that she gave Dr. Lax's exceedingly restrictive opinion little weight because it was inconsistent with the clinical

---

[5] Dr. Lax's responses indicate that Brown could *never* walk, sit, stand, lift and carry less than ten pounds, look down, turn her head to the side, look up, hold her head in a static position, twist, bend, squat, climb ladders or stairs, or use her hands, fingers, and arms. (Tr. at 322-24.)

7

and diagnostic evidence of record, as well as Brown's "extensive activities of living." (Tr. at 18.) Moreover, the ALJ noted that, because it was an opinion on the ultimate issue of disability, as opposed to a functional assessment, Dr. Lax's opinion was not deserving of any special significance. (*Id.*); *see* 20 C.F.R. § 404.1527(d)(1), (3). Thus, the ALJ considered the relevant factors and properly explained her reasoning for discounting the weight given to Dr. Lax's opinion. 20 C.F.R. § 404.1527(c)(3), (4).

Although it is clear that the ALJ followed the correct legal standard to be applied in analyzing Dr. Lax's opinion, it is not at all clear that the ALJ's RFC determination is supported by other, substantial evidence. Brown's treatment providers consistently indicated that Brown exhibited decreased range of motion in her cervical and lumbar spine, decreased sensation in her right upper extremity, reduced grip and arm strength on her right side, a positive impingement sign on the right shoulder, and tenderness in her cervical and thoracic spine, as well as shoulders. (Tr. at 258-60, 263, 307-08, 316-17, 330, 332-33, 337-38, 343.) On several occasions, straight leg raising was positive on the right and it was noted that Brown's gait was stiff or she had difficulty getting on and off of the exam table. (*Id.* at 258, 263,

8

333, 338.) In March 2011, an MRI of Brown's cervical spine revealed narrowing of multiple left foramina and multiple annular bulges, but no spinal cord compression. (*Id.* at 307.) Thereafter, x-rays showed a reversed cervical lordosis, diffuse disc degeneration, and moderate hypertrophic spurring at C2-C7. (*Id.* at 308.)

Chiropractic treatment records reveal trigger points in the right upper trapezius and a mild degree of hypertonicity of the suboccipital muscles, cervical paraspinal muscles, upper thoracic muscles, and mid thoracic muscles bilaterally. (*Id.* at 309-14, 319.) Brown's chiropractor repeatedly reported that Brown suffered a marked partial disability and opined that she should not perform work requiring repeated bending or lifting, prolonged neck flexion, or pushing, pulling, or carrying over ten pounds. (*Id.* at 309.) Notably, the ALJ did not explicitly consider this opinion in her decision.[6] (*See generally id.* at 15-19.) On examination by Dr. Ganesh, Brown could not walk on her heels or toes or perform a squat. (*Id.* at 269-70.) The range of motion of Brown's lumbar spine and right shoulder was decreased, strength in her right upper extremity was 4/5, and there was

---

[6] The court notes that, under the regulations, the opinions of chiropractors are not deserving of controlling weight, but, nonetheless, "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 71 Fed. Reg. 45,593, 45,594 (Aug. 9, 2006)*; see* 20 C.F.R. § 404.1513(a)(d).

9

tenderness in her cervical, thoracic, and lumbar spine.  (*Id.* at 271.) Notably, Dr. Ganesh did not assert an opinion as to Brown's ability to reach with her right upper extremity.  (*Id.*)

Given the above cited clinical findings, the overlooked functional assessment of Brown's treating chiropractor, and the vague nature of Dr. Ganesh's opinion, the court remands this case for further consideration of Brown's RFC.  *See Burgess v. Astrue*, 537 F.3d 117, 128-29 (2d Cir. 2008).  Although the ALJ stated that Brown's "extensive" daily activities supported her RFC determination, Brown's reports to her treating and examining medical sources suggest that she had difficulty performing household chores such as cooking, cleaning, washing laundry, and shopping, as well as caring for her personal hygiene.  (Tr. at 16, 18, 260, 266, 329, 331, 335, 336, 338.)  Brown returned to work after her alleged onset date, but was only able to work two days per week, after which she required two days to recover.  (*Id.* at 262.)  Thus, standing alone, these activities do not support the ALJ's conclusion that Brown can perform light work.  The Commissioner argues that Brown's conservative treatment regimen, and the recommendation from her vocational rehabilitation counselor that she consider alternative positions, are inconsistent with Dr.

Lax's opinion and consistent with the ALJ's RFC finding.  (Dkt. No. 14 at 9.)
In addition, the Commissioner contends that records first submitted to the
Appeals Council demonstrate that Brown's vocational rehabilitation
counselors were "helping her to navigate the 'system'" by exaggerating her
limitations to her doctors and postponing enrollment in school until after
she began receiving benefits.  (*Id.*)  While the ALJ should consider Brown's
course of treatment and the new evidence submitted to the Appeals
Council on remand, the court notes that a thorough reading of the records
from Brown's vocational rehabilitation counselor reveals that, in her
opinion, Brown had been understating her limitations to Dr. Lax.  (Tr. at
368, 374.)  Further, the vocational evaluation completed for Brown is not an
assessment of her physical capabilities, but, rather, appears to be based
on an earlier functional assessment completed by Dr. Lax.  (*Id.* at 369, 376-
80.)  Indeed, the records submitted to the Appeals Council contain a
functional assessment completed by Dr. Lax, in October 2010, two months
before Brown's alleged onset date, restricting her to working only two eight-
hour days a week.  (*Id.* at 393-94.)  On remand, the ALJ should consider
this opinion, and, if necessary, re-contact Dr. Lax or obtain expert opinion
as to Brown's functional capabilities.

With respect to the ALJ's finding that Brown is only limited from performing "highly complex tasks," (*Id.* at 16), after reviewing the administrative record the court concludes that this determination is supported by substantial evidence. Specifically, the ALJ's mental RFC determination is supported by the opinions of Dr. Caldwell and psychological consultant Harding, as well as Brown's lack of treatment for mental health impairments. (*Id.* at 264, 266, 288-91.) In May 2010, Brown reported to her treating doctor that she was experiencing some anxiety and concentration deficits, but she was "able to enjoy things" and was not depressed. (*Id.* at 254.) At this time, Brown did not want to take daily medication for anxiety. (*Id.* at 255.) Thereafter, in July 2011, Brown denied significant anxiety or depression and her treating physician assistant concluded that her anxiety was mild and did not require medication. (*Id.* at 352-53.) Her treatment notes are devoid of complaints regarding difficulty relating to others, and Brown reported that she had no problems getting along with bosses, teachers, or other people in authority. (*Id.* at 186.) Thus, the ALJ's determination with respect to Brown's mental limitations is supported by substantial evidence.

B. **Remaining Findings and Conclusions**

Because Brown's remaining contentions, (Dkt. No. 12 at 15-17), may be impacted by the subsequent proceedings directed by this Order, it would be premature of the court to address them at this juncture.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 16, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court